KATHLEEN AND FRANCIS GIEFER v. JOHN DIERCKX AND OTHERS.[1]

January 6, 1950.

Nos. 35,035, 35,036.

*Palmer & Houts,* for appellants.
*C. J. Donnelly,* for respondents.

KNUTSON, JUSTICE.

These appeals are from orders sustaining demurrers to the complaints of plaintiffs.

Defendants John Dierckx, W. H. White, and John Boyer are members of the town board of Lake Marshall township in Lyon county. Defendants Joe Dickerman and Anthony Ufkin were road overseers for such township.

[1]Reported in 40 N. W. (2d) 425.

The complaints allege, and for the purpose of this inquiry we must assume to be true, the following facts: On June 8, 1947, a bridge on one of the township roads was washed out and collapsed on account of a heavy rain. On the morning of June 9, 1947, the day following the washout, defendant Ufkin, in his capacity of road overseer and acting with the knowledge and under the instructions of the defendants who were the township officers, placed a barrier across the road approximately 20 or 30 rods west of the washed-out bridge. He placed no barrier or warning on the east side of the washout. On the afternoon of June 14, 1947, plaintiff Kathleen Giefer, while driving the automobile of plaintiff Francis Giefer in a westerly direction, drove into the washout and sustained the damages of which she complains.

The only question raised by this appeal is whether the township officers are personally liable under the facts stated in the complaint. Demurrers to the complaints were interposed by defendants Dierckx, Dickerman, White, and Boyer on the ground that the complaints did not state facts sufficient to constitute a cause of action. The trial court sustained these demurrers interposed by defendant township officers and Dickerman, the overseer who did nothing. We have before us only questions involving the liability of the defendants whose demurrers were sustained.

Plaintiffs rely principally upon Tholkes v. DeCock, 125 Minn. 507, 147 N. W. 648, 52 L. R. A. (N. S.) 142. In that case, a township road having become out of repair, the township road overseer proceeded to have it repaired. He employed a person who was not connected with the township to do the work. In making the repair, an old bridge or culvert was removed, and the excavation so caused was left open during the night without guards, lights, or other warnings to the public. Plaintiff ran into the excavation with his automobile and received the injuries of which he complained. We held the defendant township officer and the individual who had been employed to do the work liable for their affirmative acts of negligence. We there said (125 Minn. 508, 147 N. W. 648):

"* * * The complaint sufficiently charges negligence upon the part of both defendants, in the failure to erect guards or place lights at the excavation, as a warning to those traveling upon the road, and we assume, in disposing of the case, that both were equally under legal obligations to guard the excavation, extending across the traveled part of the road, and to protect travelers thereon from harm. In other words we give no consideration to the fact that one of the defendants was an officer and the other an employee. They are both charged with negligence in the respect stated, and are treated for present purposes as jointly liable."

With respect to liability generally we said (125 Minn. 511, 147 N. W. 649):

"* * * There can be no question that the work of repairing highways involves ministerial duties only, so far as concerns the actual work of repair. Tearney v. Smith, 86 Ill. 391.

"We accordingly hold that the fact the towns of the state are not liable for defects in their roads or highways, or for the negligence of the officers thereof in the case of the same, does not relieve such officers from the consequences of their negligence in exposing the traveling public to injury from defects occasioned in the affirmative act of repairs. The authorities seem to differentiate to some extent between acts of nonfeasance, that is, a failure to make repairs when needed, and positive acts of negligence in making such repairs, or misfeasance. We do not deem it necessary to discuss this phase of the question. It is unnecessary. We have here affirmative misconduct, and, according to the allegations of the complaint, gross negligence on the part of defendants; in attempting to repair the road in question, they removed a culvert therein and left exposed over night, without warnings of any kind, the trench across the roadway which was a trap to those traveling upon the road, and inevitably likely to cause them serious injury."

In attempting to bring the case now before us within the rule of the Tholkes case, plaintiffs allege in their complaints:

"IV.

"That on or about the morning of June 9th, the day following the wash-out, defendant, Anthony Ufkin, in his capacity as road overseer and acting with the knowledge of and under the instructions of the other defendants herein and acting as agent for said defendants, proceeded to the scene of the washed out bridge. That defendant Ufkin, realizing the hazardous and dangerous condition that the washed out bridge presented to travel by the general public upon said township road, *then and there took affirmative action* in an attempt to warn the public of said dangerous and hazardous condition by placing across the road a barrier approximately twenty (20) or thirty (30) rods west of said washed out bridge.

"V.

"That defendant, Anthony Ufkin, having realized the dangerous and hazardous condition of said road because of the washed out bridge, and *having undertaken an affirmative act to warn the public of such dangerous and hazardous condition,* negligently and wrongfully failed to adequately warn the general public of the dangerous and hazardous condition of said road in that he placed no warning of any kind whatsoever on the east side of said washed out bridge." (Italics supplied.)

In Bolland v. Gihlstorf, 134 Minn. 41, 158 N. W. 725, we held squarely that township trustees and the road overseer are not personally liable for failure to repair bridges or roads. That decision was later followed in Stevens v. North States Motor, Inc. 161 Minn. 345, 201 N. W. 435, 40 A. L. R. 36. In distinguishing the Tholkes case, we said in the Stevens case (161 Minn. 349, 201 N. W. 436):

"* * * The case of Tholkes v. DeCock [125 Minn. 507, 147 N. W. 648], supra, relied upon by appellant, was a case of misfeasance on the part of the overseer in repairing a culvert in a public highway. It was not a case of nonfeasance like unto the case at bar. There, the overseer undertook to repair the culvert, and while so doing went beyond his duty in that he left a pitfall in the culvert

over night, an independent tort for which he was personally liable, the same as would any other person, in no way connected with the highway, have been. The leaving of such a mantrap was no part of the overseer's duty. True, it was done while the overseer was in the act of repairing the culvert, but, the act of leaving the pitfall open and unprotected over night was not a part of his official duties. It constituted misfeasance as distinguished from nonfeasance, and therein lies a distinction between that case and the one at bar."

Plaintiffs contend that, once the road overseer had given any warning at all, failure to give adequate warning became an act of malfeasance and not one of nonfeasance. The weakness of this argument is that the accident was not caused by anything defendants did, but by failure on their part to do something more. Placing the warning on the west side did not cause the accident. It is not a situation similar to the acts complained of in the Tholkes case, where the affirmative act of the repairman in opening the excavation and leaving it unprotected was directly responsible for the accident. If the distinction is to be placed on nonfeasance or misfeasance, it is clear that failure here to place a warning on the east side is still an act of nonfeasance. It is not an act of malfeasance or misfeasance.

For a discussion of these and other cases, see 19 Minn. L. Rev. 672; 21 Minn. L. Rev. 298; 26 Minn. L. Rev. 297, 321, and 486.

To hold that when the town officers do nothing at all there is no liability, but that if they attempt to give some warning and it fails to prevent the accident they are liable, would lead to absurd results. When they do something which directly causes the accident, we have a different situation. That is not the case here.

While the authorities are not at all uniform in adhering to the rule of nonliability, and in these days of fast motor vehicular traffic it may not be the best rule, we have been committed to the rule for so many years that if it is now to be changed the change

should be brought about by legislative rather than by judicial action.

Affirmed.